Jeffrey I. Carton (JC-8296)
Myles K. Bartley (MB-8431)
Robert J. Berg (RB-8542)
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
(914) 331-0100
jcarton@denleacarton.com
mbartley@denleacarton.com
rberg@denleacarton.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| LISA CORBETT, LAURA KASIOTIS, and JENNIFER O'NEILL on behalf of themselves and all others similarly situated, | : : : : | Civil Action No.: 7:16-cv-8687 |
| Plaintiffs, | : : | **CLASS ACTION COMPLAINT** |
| -against- | : : | **JURY TRIAL DEMANDED** |
| CHURCH & DWIGHT CO., INC., STANDARD HOMEOPATHIC COMPANY, HYLAND'S, INC., CVS HEALTH CORPORATION, and TARGET CORPORATION, | : : : : : | |
| Defendants. | : : | |

_____

Plaintiffs Lisa Corbett, Laura Kasiotis, and Jennifer O'Neill, by and through their counsel, Denlea & Carton LLP, respectfully file this Class Action Complaint on behalf of themselves and a class of similarly-situated individuals who have purchased certain homeopathic teething products that have been recalled or discontinued, and allege as follows:

## NATURE OF THE CASE

1.      Plaintiffs are New York and Connecticut consumers who purchased

defendants' homeopathic teething products sold in defendants' retail stores.  Following alarming safety warnings from the Food and Drug Administration ("FDA"), including FDA warnings that use of defendants' products have been associated with more than 400 reports of "adverse events – such as seizure, fever, vomiting and shortness of breath – over the last six years," the defendants voluntarily withdrew or discontinued the sale of these products.

2.      Notwithstanding the fact that defendants no longer sell these products to consumers as a result of the adverse events associated with them, defendants have not offered any refund to the thousands of New York and Connecticut consumers that have purchased these (now) useless and unsafe products.

3.      As a result, consumers have been injured by paying for unsafe products which are effectively worthless.

## THE PARTIES

4.      Plaintiff Lisa Corbett is a natural person of full age of majority who is domiciled and resides in Milford, Connecticut.  Ms. Corbett purchased Baby Orajel Naturals Tablets for Teething Pain, Baby Orajel Naturals Gel for Teething Pain, and Baby Orajel Naturals Gel for Teething Pain Nighttime Formula at Target in Danbury, CT.

5.      Plaintiff Laura Kasiotis is a natural person of full age of majority who is domiciled and resides in Bronxville, New York.  Ms. Kasiotis purchased Baby Orajel Naturals Nighttime Gel at CVS in Rockville Centre, NY.

6.      Plaintiff Jennifer O'Neill is a natural person of full age of majority who is domiciled and resides in Walden, New York.  Ms. O'Neill purchased Hyland's Teething Tablets at Target in Newburgh, New York.

**Manufacturer Defendants**

7.      Defendant Church & Dwight Co., Inc. ("Church & Dwight") is a Delaware corporation with its principal executive offices at 500 Charles Ewing Boulevard, Ewing, N.J. 08628.  Founded in 1846, Church & Dwight is a $3.4 billion company that is headquartered in Ewing, New Jersey. Church & Dwight's describes itself as "one of the fastest growing Consumer Packaged Goods companies that has outpaced the Standard & Poor's by more than three times over the last 10 years." Church & Dwight contends it is a leader in the Household Consumer Products and Personal Care industry, with such brands as ARM & HAMMER, Trojan, First Response, Nair, Spinbrush, OxiClean, Orajel and more.  Defendant Church & Dwight sold its homeopathic teething products under the brand name "Orajel."

8.      Defendant Standard Homeopathic Company ("Standard"), is a Nevada domestic corporation, and its registered agent is The Corporation Trust Company of Nevada, 701 S Carson Street, Suite 200, Carson City, NV 89701.  Standard offers products for various ailments, such as stress/sleep, pain relief, women's health, digestion, cough/cold, first aid, skin, teething tablets, topicals, and household and kids kits. Standard offers its products through chain drug stores, pharmacies, grocery stores, natural product stores, and supercenters. Founded in 1903, Standard is headquartered in Los Angeles, California.

9.      Defendant Standard, through its division, Hyland's Inc., sold its homeopathic teething products under the brand name "Hyland's."  Defendant Hyland's, Inc. ("Hyland's"), claims it develops homeopathic medicines with the highest- quality natural ingredients, following the strictest standards of preparation. Hyland contends it

"consistently provides quality and integrity in every product." Hyland's assures that "Consumers can trust all Hyland's products to be natural, gentle, effective and safe for the entire family." Hyland's is a California company, with its address at P.O. Box 61067, Los Angeles, CA 90061. Hyland's Agent for Service of Process is Dale Nepsa, 1165 East 230th Street, Carson, CA 90745.

10. Church & Dwight, Standard, Hyland's, and CVS (discussed *infra*) are collectively the "Manufacturer Defendants."

**Retailer Defendants**

11. Defendant CVS Health Corporation ("CVS") is a Delaware corporation with its principal executive offices at One CVS Drive, Woonsocket, Rhode Island 02895. CVS also markets and sells certain of its own CVS-branded homeopathic products, including products CVS withdrew from its shelves following the FDA warning. CVS is also a "Manufacturer Defendant." In addition to selling its own homeopathic teething products, CVS marketed and sold Defendants' Church & Dwight, Standard, and Hyland's homeopathic teething products in CVS retail locations in New York and Connecticut.

12. Defendant Target Corporation ("Target") is a Minnesota corporation with its principal executive offices at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Target marketed and sold Defendants' Church & Dwight, Standard, and Hyland's homeopathic teething products in Target's retail locations in New York and Connecticut.

13. CVS and Target are collectively the "Retailer Defendants."

**JURISDICTION AND VENUE**

14. This Court has jurisdiction over this action pursuant to the Class Action

4

Fairness Act of 2005, 28 U.S.C. § 1332(d).  Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs and (2) the named Plaintiffs and the Defendants are citizens of different states. 28 U.S.C. §1332(d)(2)(A).  The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendants have marketed and sold the products at issue in this action within this judicial district and have done business within this judicial district.

**GENERAL ALLEGATIONS**

**Church & Dwight**

16.     Church & Dwight, through its Orajel brand, manufactured and sold Baby Orajel Naturals Tablets for Teething Pain, Baby Orajel Naturals Gel for Teething Pain, and Baby Orajel Naturals Gel for Teething Pain Nighttime Formula.

17.     Church & Dwight promoted and advertised its teething products as safe. Regarding its Baby Orajel Homeopathic Teething Tablets, Church & Dwight assured parents that the tablets "help soothe your baby's teething pain safely and naturally." (Available at:

https://web.archive.org/web/20160328153303/http://www.orajel.com/en/Products/child-oral-care/Baby-Orajel-Homeopathic-Teething-Tablets)

18.     Church & Dwight's website also included glowing testimonials from anonymous parents, claiming, for example, that its homeopathic teething products were

safe for use.

19.     Church & Dwight posted that: "Heather" from Illinois gushed, "With Baby
ORAJEL Naturals, I know I am giving her something safe."; "Corrine" from Pennsylvania
reported that, "Baby ORAJEL Naturals . . . was exactly what was needed.  It was safe
and soothed . . . [her daughter's] pain . . . I have no problem recommending it to
ANYONE that is looking for a great, fast, safe, teething pain solution!"; and "Janey" from
Georgia raved, "I also love that it's safe to use on my child."  (Available at:

https://web.archive.org/web/20160328153303/http://www.orajel.com/en/Products/child-
oral-care/Baby-Orajel-Homeopathic-Teething-Tablets)

20.     Church & Dwight made similar safety claims about its other baby
homeopathic teething products.

21.     Church & Dwight's website claimed Baby Orajel Homeopathic Teething
Gel "offers safe, effective, and naturally derived teething pain relief for your baby."
(Available at:

https://web.archive.org/web/20160328160743/http://www.orajel.com/en/Products/child-
oral-care/Baby-Orajel-Homeopathic-Teething-Gel)

22.     Church & Dwight also lauded its Baby Orajel Homeopathic Nighttime
Teething Gel, claiming it helps to "relieve teething pain discomfort and calm the
restlessness that comes from teething, so your baby can get a good night's sleep."

23.     Church & Dwight sold its Baby Orajel products in Defendants CVS's and
Target's stores in both New York and Connecticut.

**Standard**

24.     Standard, through its Hyland's division, sold Hyland's Baby Nighttime

6

Teething Tablets, Hyland's Baby Teething Gel, Hyland's Baby Teething Tablets, and Hyland's Teething Gel.

25.     Standard marketed Hyland's Baby Tablets for Teething Pain by claiming on its website that they "make nights bearable, days livable, and truly make the teething years way more groovy."  (Available at:

https://web.archive.org/web/20150912100357/http://hylands.com/products/hylands-baby-teething-tablets).

26.     Standard's and Hyland's website contained detailed "Safety Information" about their products, including representations that the FDA had regulated its manufacturing, and providing an overall impression that their products were safe.  (*Id.*)

27.     Standard's and Hyland's website even gave parents a supposedly reassuring hypothetical about the safety of their products, positing that a 10-pound child would have to "accidentally ingest, all at the same time, more than a dozen bottles of 135 Baby Teething Tablets before experiencing" certain adverse effects.  (*Id.*)

28.     Standard and Hyland's sold its Hyland's Baby Nighttime Teething Tablets, Hyland's Baby Teething Gel, Hyland's Baby Teething Tablets, and Hyland's Teething Gel products in Defendants CVS's and Target's stores in both New York and Connecticut.

**CVS**

29.     CVS, through its own private-label product, sold CVS Homeopathic Infant's Teething Tablet and CVS Homeopathic Infants' Teething Liquid.  CVS's packaging claimed its products were "safe and effective" for children ages 0-9.

30.     CVS sold these unsafe products in its Connecticut and New York stores.

**Warning Clouds Emerge Concerning Homeopathic Remedies**

31.     In 2010, the Food and Drug Administration issued a warning that Hyland's Teething Tablets may pose a risk to children.  That FDA warning recommended that "consumers not use this product and dispose of any in their possession."

32.     The FDA also informed consumers that Hyland's was "issuing a recall of this product."

33.     The FDA warned consumers that "Hyland's Teething Tablets are manufactured to contain a small amount of belladonna, a substance that can cause serious harm at larger doses. For such a product, it is important that the amount of belladonna be carefully controlled. FDA laboratory analysis, however, has found that Hyland's Teething Tablets contain inconsistent amounts of belladonna. In addition, the FDA has received reports of serious adverse events in children taking this product that are consistent with belladonna toxicity."

34.     While Hyland's agreed to a recall at that time, Hyland's also cast doubt on the need for the recall, stating it was only agreeing to the recall "in an abundance of caution due to an FDA investigation of its manufacturing facility."  (Available at: https://www.hylands.com/media/press-release/working-fda-standard-homeopathic-company-voluntarily-recalls-hyland%E2%80%99s-teething, last visited Nov. 1, 2016)

35.     Hyland's press release, while announcing the recall, also continued to extol its product's safety, noting that it has "85 years of safe usage" and that "the company is confident that Hyland's Teething Tablets are safe for infants and toddlers." (*Id.*)

36.     In July 2011, Hyland's announced the return of its homeopathic teething

tablets, stating it had modified its manufacturing process, and again claiming its products were safe.

37.     In September 2015, the USA Today reported that a Texas infant was having five to six seizures a day after she started taking Hyland's Baby Nighttime Teething Tablets.  Jay Wallis, "Mom: Baby's seizures caused by teething tablets," *USA Today*, Sept. 1, 2015 (available at: http://www.usatoday.com/story/news/nation-now/2015/09/01/mom-babys-seizures-caused-teething-tablets/71518032/ last visited Nov. 3, 2016).

38.     The USA Today reported that the mom provided the homeopathic teething tablets because "It's supposed to be a safer way to keep your baby in a little less pain when they're teething."  After stopping giving her infant the Defendant's homeopathic teething tablets, The USA Today reported that the seizures decreased each day until they ceased altogether.

39.     In that same article, The USA Today also reported that an ingredient in Hyland's homeopathic teething tablets had earlier been linked to seizures by a 2014 study from the National Institute for Health's U.S. National Library of Medicine.

40.     Other aspects of homeopathic remedies raised concerns.  For example, in April 2011, the FDA issued a warning to healthcare professionals and patients that "that FDA continues to receive reports of methemoglobinemia, a serious and potentially fatal adverse effect, associated with benzocaine products both as a spray, used during medical procedures to numb the mucous membranes of the mouth and throat, and benzocaine gels and liquids sold over-the-counter and used to relieve pain from a variety of conditions, such as teething, canker sores, and irritation of the mouth and

gums."

41.    Benzocaine is a local anesthetic that was in products like Orajel & Baby Orajel.

42.    Despite these warnings, Defendants continued to market and sell their products to consumers without any warning or notice of potentially adverse effects.

**FDA Issues New Warning**

43.    On September 30, 2016, the FDA issued a warning to consumers that "homeopathic teething tablets and gels may pose a risk to infants and children. The FDA recommends that consumers stop using these products and dispose of any in their possession."

44.    The FDA warning explained that it was analyzing "adverse events report[ed] to the agency regarding homeopathic teething tables and gels, including seizures in infants and children who were given these products."

45.    In addition, and in contrast to the representations Defendants have been providing consumers, the FDA explicitly told consumers that "[h]omeopathic teething tablets and gels *have not been evaluated or approved by the FDA for safety or efficacy*. The agency is also not aware of any proven health benefit of the products, which are labeled to relieve teething symptoms in children."

46.    The New York Times reported that the FDA had "received numerous reports of seizures, difficulty breathing, lethargy, excessive sleepiness, muscle weakness and agitation after children were given homeopathic teething products." Catherine Saint Louis, "10 Infants Deaths May Be Related to Teething Remedies, F.D.A. Says," THE NEW YORK TIMES, at A16 (Oct. 19, 2016).

47.    In response to this latest FDA warning, Hyland's doubled down, calling the FDA's warning a "surprise statement," complaining that the "new FDA statement increases the confusion" about the safety of its products, but nevertheless boasting that "we are confident that Hyland's Baby Teething Tablets remain safe."  (Hyland's Sept. 30, 2106 Press Release.)

48.    And in complete contrast to the FDA's statement, Hyland's proclaimed that its homeopathic medicines "are regulated as drugs by the FDA."  (*Id.*)

49.    Nearly two weeks later, Hyland's continued to proclaim that its products posed no danger, claiming "our products are safe."  (Hyland's Oct. 12, 2016 Press Release.)

50.    Notwithstanding its claim that its products were safe, Hyland's discontinued distribution of its teething products in the United States.

51.    In response to the FDA's warning, Church & Dwight's Baby Orajel teething products, including its Baby Orajel Naturals Tablets for Teething Pain, Baby Orajel Naturals Gel for Teething Pain, and Baby Orajel Naturals Gel for Teething Pain Nighttime Formula, are no longer available via its website.

52.    But Church & Dwight's Baby Orajel website contains no notice to consumers that the FDA has specifically warned that homeopathic teething tablets and gels may pose a risk to infants and children or that the FDA recommends that consumers stop using these products and dispose of any in their possession.

**Retailers Pull Products From Its Stores But No Defendant Offers A Refund**

53.    In response to the FDA's warning, numerous retailers have pulled the Baby Orajel and Hyland's teething products from their shelves, including Defendants

CVS and Target.

54.     CVS issued a press release on September 30, 2016 announcing that it had "voluntarily withdrawn all brands of homeopathic teething products sold in its retail stores and online at CVS.com," including Defendants Church & Dwight's and Hyland's teething products, as well as CVS's own homeopathic teething products.  CVS also informed consumers that CVS had placed a "do not sell" block in its store register system to prevent further sale of these products.

55.     Target, on the other hand, issued no statement concerning its decision to halt the sale of Defendants Church & Dwight's and Hyland's teething products.  Target simply pulled the products from its shelves and stopped making the products available on Target's website, without informing consumers of what Target was doing or why Target was taking this action.

56.     None of the Defendants, neither the manufacturers (Defendants Church & Dwight, Standard, and Hyland's), nor the retailers (Defendants CVS and Target) offered consumers any form of compensation for the dangerous products consumers purchased and which are now worthless.  Defendants have offered no refund, rebate, discount, or other form of compensation to consumers, despite the fact that the products were recalled, pulled from store shelves, and their US distribution discontinued.  The fact that consumers have been warned not to use the products and to dispose of any unused products in their possession renders such products worthless.

## CLASS ACTION ALLEGATIONS

57.     Applying New York and Connecticut substantive law, Plaintiffs seek to be appointed as class representatives of a New York and Connecticut class composed of

and defined below.

58.     Plaintiffs allege a separate class for each State based upon the applicable laws set forth in the alternative state law counts.  Each class is defined as follows for the claims asserted under a particular jurisdiction's law:

- During the fullest period allowed by law, all persons who purchased Baby Orajel Naturals Tablets for Teething Pain, Baby Orajel Naturals Gel for Teething Pain, Baby Orajel Naturals Gel for Teething Pain Nighttime Formula, Hyland's Baby Nighttime Teething Tablets, Hyland's Baby Teething Gel, Hyland's Baby Teething Tablets, and Hyland's Teething Gel, in New York (the "New York Class").
- During the fullest period allowed by law, all persons who purchased Baby Orajel Naturals Tablets for Teething Pain, Baby Orajel Naturals Gel for Teething Pain, Baby Orajel Naturals Gel for Teething Pain Nighttime Formula, Hyland's Baby Nighttime Teething Tablets, Hyland's Baby Teething Gel, Hyland's Baby Teething Tablets, and Hyland's Teething Gel, in Connecticut (the "Connecticut Class").

59.     Excluded from both classes are Defendants, their parents, subsidiaries, affiliates, officers and directors, class counsel and their employees, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Defendants' products for resale.  Also excluded are any individuals claiming damages from personal injuries arising from Defendants' homeopathic teething products.

60.     This action involves questions of law and fact common to the Class. Defendants have all marketed or sold unsafe products to consumers, received full and complete payment for those dangerous products, but have uniformly failed to reimburse consumers.  Such common issues of law and fact include, but are not limited to:

- Whether Manufacturer Defendants had knowledge of the unsafe nature of Defendants' homeopathic teething products;
- Whether Manufacturer Defendants concealed the unsafe nature of Defendants' homeopathic teething products;

- Whether Manufacturer Defendants misrepresented the safety of Defendants' homeopathic teething products;

- Whether Retailer Defendants breached the implied warranty of merchantability because Defendants' homeopathic teething products were not fit for their ordinary purpose;

- Whether Defendants' homeopathic teething products were not merchantable because they were unsafe;

- Whether Defendants have received full and complete payment for their unsafe products;

- Whether the Class members have sustained a monetary loss and the proper measure of that loss;

- Whether the Class members obtained the benefit of their bargain in purchasing the now recalled and discontinued teething products from Defendants; and

- Whether, as a result of Defendants' misconduct, the Class is entitled to monetary and statutory damages, as well as equitable and injunctive relief.

61. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

62. This action is appropriately suited as a class action. The members of the class are so numerous that joinder of all members of the class is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed classes contain thousands of purchasers of Defendants' products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members in each Class is unknown to Plaintiffs.

63. Plaintiffs' claims are typical of the claims of members of the New York and Connecticut Classes, and Plaintiffs will fairly and adequately protect the interests of each Class. Plaintiffs purchased Defendants' unsafe and recalled teething products and suffered an injury-in-fact as a result of Defendants' conduct, as did members of each

Class who purchased any of Defendants' homeopathic teething products.  Plaintiffs'

interests are coincident with and not antagonistic to those of the other members of each

Class.  Plaintiffs are represented by counsel who is competent and experienced in the

prosecution of consumer class action litigation.

64.     A class action is superior to other methods for the fair and efficient

adjudication of this controversy.  The damages or other financial detriment suffered by

individual Class members are relatively small compared to the burden and expense that

would be entailed by individual litigation of their claims against Defendants.  It would be

virtually impossible for a member of either Class, on an individual basis, to obtain

effective redress for the wrongs done to him or her.  Furthermore, even if the Class

members could afford such individualized litigation, the court system could not.

Individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts.  Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues

raised by this action.  By contrast, the class action device provides the benefits of

adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no management difficulties

under the circumstances here.

**FIRST CAUSE OF ACTION**
**(Violation of New York General Business Law Section 349)**
**(Against Manufacturer Defendants)**

65.     Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

66.     Defendants have made false representations about their teething

15

products, and so, the representations claimed are deceptive, and have the capacity, tendency, and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that Defendants homeopathic teething products are safe.  In reality, Defendants' homeopathic teething products are unsafe. Defendants made the false representations about their homeopathic products, those representations were misleading in a material respect to consumers, and resulted in the purchase of Defendants' products.

67.    Defendants have deceptively advertised, marketed, promoted, distributed, and sold their homeopathic teething products.

68.    Plaintiffs and the New York Class have been aggrieved by and have suffered losses as a result of Defendants' violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the New York Class have been substantially injured in the amount of the purchase prices for the homeopathic teething products that they paid, have been damaged by paying more for the homeopathic teething products that they purchased than for other similar teething products, or in the alternative, by failing to provide Plaintiffs a refund once Defendants stopped selling and distributing the products.

69.    By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendants are liable to Plaintiffs and the New York Class for the actual damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory damages, treble

damages, and attorneys' fees and costs.

70.     Plaintiff further demands injunctive relief enjoining Defendants from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

**SECOND CAUSE OF ACTION**
**(Violation of New York's General Business Law Section 350)**
**(Against Manufacturer Defendants)**

71.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

72.     New York's General Business Law Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

73.     Section 350 defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates."

74.     Defendants' labeling, marketing, and advertising of their homeopathic teething products is "misleading in a material respect," and thus "false advertising," as they falsely represent the products to be safe when, in reality, they are unsafe.

75.     By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General

Business Law, and Defendants are liable to Plaintiffs and the New York Class for the actual damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

76.     Plaintiffs further demand injunctive relief enjoining Defendants from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 350 of the New York General Business Law.

### THIRD CAUSE OF ACTION
**(Violation of Connecticut's Unfair Trade Practices Act Conn. Gen. Stat. Section 42-110a, *et seq.*)**
**(Against Manufacturer Defendants)**

77.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

78.     Connecticut's Unfair Trade Practices Act states no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

79.     Defendants' labeling, marketing, and advertising of their homeopathic teething products is misleading in a material respect and is likely to mislead consumers.

80.     Plaintiffs and Connecticut Class members would review Defendants' acts and practices and believe that Defendants' homeopathic teething products were safe.

81.     Plaintiffs and Class members could not reasonably avoid being injured by Defendants' acts and practices.

82.     Plaintiffs and Connecticut Class members would be thereby materially misled, and Defendants' misconduct would affect the Connecticut consumer's decisions

or conduct.

83.     As a result of Defendants' actions, Plaintiffs and Connecticut Class members have been injured and Defendants are liable to Plaintiffs and the Class for the actual damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**
**(N.Y. U.C.C. § 2-314)**
**(Against Retailer Defendants)**

84.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

85.     This count is asserted on behalf of the Plaintiffs and New York Class members who purchased Defendants' products in New York.

86.     Defendants CVS and Target are and were at all relevant times a merchant with respect to Defendants' homeopathic teething products.

87.     A warranty that Defendants' homeopathic teething products were in merchantable condition is implied by law in the instant transactions.

88.     By placing Defendants' homeopathic teething products in the stream of commerce, Defendants were impliedly warranting that the products were reasonably safe, adequately tested for their intended use, and that they were of merchantable quality.

89.     Defendants' homeopathic teething products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which teething products are used.  Specifically, Defendants' homeopathic teething

products are inherently unsafe in that the Food and Drug Administration has specifically warned consumers that these products pose a risk to infants and children. Acknowledging that dire risk, Defendants CVS and Target have pulled these dangerous products from their store shelves and have discontinued selling these unsafe products online.

90.     As a direct and proximate result of Defendants' CVS' and Targets' breach of the warranties of merchantability, Plaintiffs and the New York Class have been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT / COMMON LAW WARRANTY**
**(Based on New York Law)**
**(Against Retailer Defendants)**

91.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

92.     This count is asserted on behalf of the Plaintiffs and New York Class members who purchased Defendants' products in New York.

93.     To the extent Defendants CVS's and Target's sale of Defendants' homeopathic teething products is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Defendants CVS and Target have provided no remedies to Plaintiffs or the New York Class despite their sale of unsafe products and/or warranties concerning the quality or nature of those products.

94.     Defendants CVS and Target breached this warranty or contract obligation by failing to compensate Plaintiffs and the New York Class for the damages sustained due to Plaintiffs' and the Class members' purchase of the Defendants' unsafe

homeopathic teething products.

95.     As a direct and proximate result of Defendants CVS's and Target's breach of contract or common law warranty, Plaintiffs and the New York Class members have been damaged in an amount to be proved at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Conn. Gen. St. Ann. § 42a-2-314)**
**(Against Retailer Defendants)**

96.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

97.     This count is asserted on behalf of the Plaintiffs and Connecticut Class members who purchased Defendants' products in Connecticut.

98.     Defendants CVS and Target are and were at all relevant times a merchant and a "person" with respect to Defendants' homeopathic teething products.

99.     A warranty that Defendants' homeopathic teething products were in merchantable condition is implied by law in the instant transactions.

100.     By placing Defendants' homeopathic teething products in the stream of commerce, Defendants were impliedly warranting that the products were reasonably safe, adequately tested for their intended use, and that they were of merchantable quality.

101.     Defendants' homeopathic teething products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which teething products are used.  Specifically, Defendants' homeopathic teething

21

products are inherently unsafe in that the Food and Drug Administration has specifically warned consumers that these products pose a risk to infants and children. Acknowledging that dire risk, Defendants CVS and Target have pulled these dangerous products from their store shelves and have discontinued selling these unsafe products online.

102.    As a direct and proximate result of Defendants' CVS' and Targets' breach of the warranties of merchantability, Plaintiffs and the Connecticut Class have been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT / COMMON LAW WARRANTY
### (Based on Connecticut Law)
### (Against Retailer Defendants)

103.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

104.    This count is asserted on behalf of the Plaintiffs and Connecticut Class members who purchased Defendants' products in Connecticut.

105.    To the extent Defendants CVS's and Target's sale of Defendants' homeopathic teething products is deemed not to be a warranty under Connecticut's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Defendants CVS and Target have provided no remedies to Plaintiffs or the Connecticut Class despite their sale of unsafe products and/or warranties concerning the quality or nature of those products.

106.    Defendants CVS and Target breached this warranty or contract obligation by failing to compensate Plaintiffs and the Connecticut Class for the damages sustained due to Plaintiffs' and the Connecticut Class members' purchase of the Defendants'

unsafe homeopathic teething products.

107. As a direct and proximate result of Defendants CVS's and Target's breach of contract or common law warranty, Plaintiffs and the Connecticut Class members have been damaged in an amount to be proved at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiffs as the named class representatives, and designating the undersigned as Class Counsel.

B. On Plaintiffs' First Cause of Action, awarding against Manufacturer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages.

C. On Plaintiffs' Second Cause of Action, awarding against Manufacturer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages.

D. On Plaintiffs' Third Cause of Action, awarding against Manufacturer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be

determined at trial, plus treble damages.

E.      On Plaintiffs' Fourth Cause of Action, awarding against Retailer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages.

F.      On Plaintiffs' Fifth Cause of Action, awarding against Retailer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages.

G.      On Plaintiffs' Sixth Cause of Action, awarding against Retailer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages.

H.      On Plaintiffs' Seventh Cause of Action, awarding against Retailer Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus treble damages.

I.      Awarding Plaintiffs and the Class interest, costs, and attorneys' fees.

J.      Enjoining Defendants from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and 350 of the New York General Business Law.

K.      Awarding Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      White Plains, New York
            November 9, 2016

                                    Respectfully Submitted,

                                    /s/ Jeffrey I. Carton
                                    DENLEA & CARTON LLP
                                    Jeffrey I. Carton, Esq. (JC-8296)
                                    Myles K. Bartley (MB-8431)
                                    Robert J. Berg, Esq. (RB-8542)
                                    2 Westchester Park Drive, Suite 410
                                    White Plains, New York 10604
                                    Telephone: (914) 331-0100
                                    Facsimile: (914) 331-0105
                                    jcarton@denleacarton.com
                                    mbartley@denleacarton.com
                                    rberg@denleacarton.com